*Lobdell* and *Labauve*, for the appellant.

## WILLIAM BLAKE v. HIS CREDITORS.

Oppositions having been filed to the homologation of a *tableau* of distribution presented by the syndic of an insolvent, praying for the cancelling of the sales made by the syndic, that the property be disposed of again for the benefit of all the creditors, and the tableau set aside, the opponents subsequently filed other oppositions by way of amendment, in which, abandoning the objects of the first oppositions, and waiving their purpose of disturbing the sales and resisting the homologation of the *tableau*, they pray that the syndic may be condemned, personally, to pay them the amounts for which they were placed in the *tableau* as creditors of the insolvent, on

the ground of his having acted without any regular appointment, having sold the property illegally, and for his neglect and waste of the property : *Held*, that the demands in the original and amended oppositions are inconsistent, the one precluding the other, and cannot be cumulated in the same action, (C. P. 149) ; that the demands in the original oppositions must be considered as abandoned by the supplemental oppositions ; and that any claim for damages against the syndic, personally, for malfeasance, should be brought against him individually, and not by way of opposition to a tableau of distribution.

APPEAL from the District Court of Iberville, *Deblieux*, J.

SIMON, J.   On the 25th of May, 1824, William Blake made a surrender of his property to his creditors ; and accordingly, a meeting of his creditors, after due notice given to them, was held on the 21st of August following, before the Judge of the parish of Iberville, when J. B. Rills being found to have obtained a majority of the votes of all the creditors present, was declared by the said Parish Judge, in his *procès verbal* of the deliberations, to have been duly appointed syndic.   A copy of the said *procès verbal* having been filed and deposited with the Clerk of the District Court, an opposition was made to the homologation thereof, and to the appointment of the syndic, by Arnous and Pedron, two of the insolvent's creditors, on various grounds ; which opposition does not appear to have ever been acted upon, or brought to the consideration of the court.   At the October term, 1824, the insolvent's counsel having moved the court to have the Sheriff, Dupuy, appointed syndic to receive the property surrendered, it was objected to by Arnous and Pedron, who had filed an opposition to the first proceedings.   The Sheriff was ordered by the court, *a qua*, to be appointed syndic ; and to this Arnous and Pedron took a bill of exceptions.   The judgment appointing the Sheriff as syndic, was duly notified to the opposing creditors, and the Sheriff subsequently gave bond with a good and solvent surety, in the sum of $24,830, in favor of the insolvent's creditors, for the faithful discharge of his duties as syndic, &c.   This bond was filed on the 10th of November, 1824.

On the 26th of November, the syndic made application to the District Court for the purpose of being authorized to sell the property surrendered for the benefit of the creditors, and an order was granted accordingly ; but, in the mean time, several of the insolvent's mortgage creditors having presented their petitions to

have the mortgaged property sold for cash by the syndic, orders were granted by the Judge at chambers accordingly ; whereupon the Sheriff, as syndic, on the 31st of December, 1824, proceeded to sell the property for cash, and the sale thereof having been legally advertised, the same was adjudicated by the Parish Judge, acting as public auctioneer, to the last and highest bidders, and without appraisement.

On the 15th of April, 1825, and on the 27th of April, 1829, similar applications were made by two mortgage creditors, Louis Baugnon and François Néro, whereupon orders were granted at chambers, to sell the property mortgaged for cash, and without appraisement. The mortgaged property was sold accordingly, at public auction, on the 25th of July, 1825, and 19th of October, 1829 ; and there remaining two lots of ground in the town of Plaquemines belonging to the insolvent's estate, to be disposed of, they were sold at public auction at the request of the syndic, on the 23d of August, 1830, after due advertisements, and without appraisement.

On the 29th of April, 1831, the Sheriff, as syndic, filed a tableau of distribution of the funds proceeding from the several sales of the property surrendered, which tableau, after due notice given to the creditors, was opposed by Robert Bell and Joseph Orillion, creditors placed upon the *bilan* on several grounds, among others, that the Sheriff was illegally appointed by the court, *a qua*, syndic of the insolvent estate, Jean B. Rills having been previously appointed by the creditors, and there being no evidence in the record, of his refusal to accept, or of his resignation, and the court having no authority to appoint the Sheriff in his place ; that it was the duty of the court to convene a new meeting of the creditors for the purpose of electing a new syndic ; that the sales made by the syndic, are illegal and irregular, as they should have been made at one time, and not at four distinct periods, and the property sold according to the terms fixed by the creditors ; that the sale of the property disposed of before the promulgation of the Civil Code, could not legally take place until the creditors had fixed the terms of the sale thereof ; and that the sales made after the enactment of the Code, could not be made without appraisement, as at a Sheriff's sale. The oppositions conclude by mak-

ing the mortgage creditors, on whose application the sales were made, and the purchasers of the property sold, parties to the suit; and by praying that the orders of sale, and the order appointing the Sheriff as syndic, and the several sales made by the Sheriff, may be declared null and void; that the property sold may be brought back to the mass to be disposed of for the benefit of the creditors; and that the tableau be not homologated, &c.

These oppositions were answered by the syndic, and all the other parties cited by the opponents, alleging that said oppositions had not been filed in due time; that all the proceedings complained of are regular, and were had agreeably to law; and by praying that the tableau of distribution may be homologated.

No action was had on the issues presented by the oppositions and the answers thereto, until October, 1840, when the opponents joined by Charles Clement, another creditor, filed their amended and supplemental oppositions, representing that the syndic, Dupuy, is indebted to them, respectively, in the several sums due them by the insolvent Blake, acccording to the statements contained in the first oppositions, on the grounds: 1st. that said Dupuy, not having been appointed syndic in a legal manner, is an intermeddler, or administrator *de son tort;* 2d. that he permitted the property surrendered to be sold without complying with the legal requisites; 3d. that the property was sold without appraisement, and without the consent of the creditors, or of the court; and, 4th. that he is liable for the liabilities and debts of the insolvent, for his neglect and waste of the surrendered property. Wherefore, they respectively pray, that said syndic be condemned to pay the sums due to them respectively, and that, *in homologating the tableau of distribution, the syndic may be ordered to place the opponents thereon, and to pay them the said sums, &c.*

These supplemental, or amendatory oppositions, were excepted to by the syndic's counsel, on the ground that they were independent original claims against him, for which he was personally responsible; but the objection having been overruled by the lower court, a bill of exceptions was taken, in which it is stated by the Judge, that his decision was given at the time of an application to fix for trial the oppositions to the tableau of distribution by the syndic, made by C. Clement, Joseph Orillion, and Robert Bell.

The exception filed by the syndic to these oppositions, was considered as not admissible in proceedings which are necessarily of a summary nature ; the court being of opinion, that if, on the trial, *any thing irrelevant or inadmissible was contained in these oppositions, such matters would then be rejected and disregarded.*

The record contains several other bills of exceptions, which have not been insisted on in the argument of this cause, or which, from the view we have taken of the questions presented, it is unnecessary to notice.

It appears from the state of the case, as shown by the record, that the opponents had the benefit of a trial upon the issues presented by all their oppositions, not. only as against the tableau of distribution filed by the syndic, but also as against the syndic personally, and against all the other persons who had been made parties to the suit ; and that their pretensions, as growing out of the said oppositions, were *submitted to a jury, who returned a* verdict "in favor of the defendants," whereupon the inferior court rendered judgment in favor of the syndic and of his co-defendants on the several oppositions, overruled the latter, and ordered the tableau of distribution to be homologated and approved. From this judgment *the three opponents have appealed.*

The first question which presents itself to our consideration, grows out of the exceptions of the syndic to the filing of the supplemental oppositions, and the remarks made by the Judge, *a quo,* in the bill of exceptions. It appears therefrom, that he was not satisfied with the regularity or legality of the proceedings ; and that, although he overruled the syndic's exceptions, he was disposed to exclude and reject, or disregard any thing which would have subsequently proved to be irrelevant or inadmissible, as contained in the amendatory oppositions. As the record does not contain the charge of the court to the jury, we are totally uninformed as to what extent the opponents were permitted to urge their oppositions, or demands before the jury ; and, for aught that appears, we are induced to believe, that the trial was had upon both oppositions, since the verdict of the jury and judgment of the court, were in favor of the syndic and of the other *defend-ants,* although the latter had nothing to do with the supplemental oppositions, and particularly with the demand set up by Charles

Clement. We, therefore, find it necessary to inquire, not only into the right of the opponents to file their supplemental oppositions or demands, but also into the effect of the latter, with respect to those which were already on file, and by which the mortgage creditors, and the purchasers of the property, had been made parties to the suit.

The object of the first oppositions was clearly to obtain the cancelling of the sales made by the Sheriff, to bring the property back to the mass, to have it disposed of again for the benefit of all the creditors, and to set aside the tableau of distribution. The acts of the Sheriff, as syndic, were attacked by the opponents as mere nullities, and as not binding upon the creditors; and had these issues remained unamended, and been presented alone to the court and jury, the case would perhaps have offered very serious questions for their solution; if not as to the legality of the appointment of the Sheriff as syndic, which, not having been appealed from, had acquired the force of *res judicata*, at least with regard to the legality and validity of the proceedings subsequently had in disposing of the property surrendered.

But the opponents thought proper to change the nature of their first oppositions, and to seek another remedy, by rendering the syndic *personally liable*. Their amended oppositions were new demands, in which they were joined by Charles Clement, who had not filed any previous opposition, and the latter, together with the former opponents, concludes by praying that, *in homologating the tableau of distribution, the Sheriff be ordered to place them respectively thereon, and to pay them the amounts due them respectively*. The grounds on which they are founded are the same, and are so expressed as to show clearly that the opponents, abandoning their first object, have no further intention of disturbing the sales, and have no further objection to make to the homologation of the tableau, on which they wish to be placed for the amounts by them claimed, to be paid by the Sheriff personally. Neither of the oppositions contains any demand in the alternative; they are distinct and separate, and it is obvious that, as such, they cannot be cumulated in the same action. They are inconsistent, and, under the terms of article 149 of the Code of Practice, the one excludes the other.

Here, however, as we have already remarked, the case appears to have been tried upon both oppositions, notwithstanding the exceptions of the Sheriff, and the reservations made by the court in the bill of exceptions. This was clearly irregular; but as it was the duty of the opponents to point out the issues on which they intended to rely, had they thought fit to submit to the jury either of the demands presented by their pleadings, we are not prepared to say that they would have now the right of claiming that the cause should be remanded to be tried on either of their two distinct demands, the one of which necessarily precludes the other; particularly as, with regard to the claim set up for damages against the syndic personally, for malfeasance, suit should have been brought against him in his individual capacity, and not by way of opposition to a tableau of distribution. 6 Mart. N. S. 124. This is in accordance with the opinion of this court, pronounced in the case of *De L'Homme* v. *De Kerlegand*, 4 La. 360, in which it was held that "*the law having said that the one action precludes the other, it follows as a consequence that judgment could not be rendered on both; and, therefore, one or the other must be abandoned, before judgment could be pronounced.*" See also, 7 Mart. N. S. 400. In this case, the second demand had the effect of destroying the object of the first oppositions; it was inconsistent therewith, and once admitted to be filed, the opponents were perhaps precluded from prosecuting the former. But, however this may be, the irregularity cannot avail the appellants, who had the benefit of a trial upon both issues; and as, for aught we know, the jury may perhaps have considered the first demand as abandoned by the filing of the second, (a proposition which necessarily results from the nature of the latter,) and as no evidence of any importance has been adduced in support of the claim for damages, which, as we have just said, should have been the subject of a separate suit, and as no proof has been produced to establish that the opponents have in any manner been injured by the illegal proceedings, we are unable to discover any good reason why the verdict of the jury should be disturbed.

This conclusion renders it unnecessary to examine the legality of the proceedings had at the request of the mortgage creditors, or to inquire into the validity of the sales made by the Sheriff, in

compliance with the orders obtained. It is clear, that the appellants could not pretend to recover both the property alleged to have been illegally sold by the Sheriff, and the payment, as damages, to be supported by said Sheriff personally, of the amounts respectively due them by the insolvent.

*Judgment affirmed.*

*A. N.* and *R. N. Ogden,* and *Hiriart,* for the syndic.
*Edwards* and *T. G. Morgan,* for the appellants.